## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | **Chapter 13** |
| | : | |
| **Francis Hercker, Jr.** | : | |
| | : | |
| **Debtor.** | : | |
| | : | **Case No. 21-13092 (PMM)** |
| | : | |
| **Malvern Bank, N.A.** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **Francis Hercker, Jr.** | : | |
| | : | **Adv. No. 22-0023 (PMM)** |
| **Defendant** | : | |

# O P I N I O N

## I.      INTRODUCTION

In this adversary proceeding, the Plaintiff seeks either of two (2) measures of relief: first, that the Plaintiff's claim be excepted from discharge and, alternatively, that the Debtor be denied a discharge altogether.  The Debtor opposes both requests.  The Plaintiff now moves for summary judgment, but solely as to Count II.  The Debtor filed a Response opposing this request.  For the reasons which follow, the Plaintiff's motion will be denied.[1]

## II.      FACTUAL BACKGROUND

Prior to bankruptcy, the Debtor started a construction company known as Acoustics Plus, Inc.  Dr.'s Resp. Hercker Aff. ¶1.  The company was in business for over thirty (30) years

---

[1] Because these claims involve an objection to discharge and a request that a debt be declared non-dischargeable, each are within this court's core jurisdiction. See 28 U.S.C. § 157(b)(2)(I) and (J).

and the Debtor was both 50% owner as well as one of its officers.  Id.  In June 2016, the

company obtained two (2) loans from the Plaintiff.  Pl.'s Mot. Ex. C.  The first loan was a single

advance loan for $250,000 for the refinancing of the company's mortgage.  Id.  The second was a

$3 million line of credit for the company's working capital needs.  Id.  The Debtor personally

guaranteed both loans.  Id. Ex. D.  The relationship appears to have proceeded without incident

until 2019.

It is from this point that the parties disagree as to what happened next.  The Debtor

contends that in 2019 the Plaintiff refused to extend the line of credit.  Dr.'s Resp. Hercker Aff.

¶4.  The Plaintiff maintains that its decision to renew or revoke that credit would not be made

until 2020.  Pl.'s Mot. ¶¶12-15.[2]  Its decision, explains the Plaintiff, hinged on asset valuations

provided by the Debtor.  Id.  In deciding to keep the line open, the Bank relied specifically on the

stated value of certain outstanding accounts receivable.  Id. ¶14.  Unbeknownst to it, the Bank

continues, the Debtor's valuation of the company's largest receivable was grossly inflated.  Id.

¶15.  The Bank, then, extended the credit line based on false information.  Id. ¶14.  The debt on

the credit line would grow to somewhere between $3.2 million and $3.6 million.[3]  Compare

Schedule E/F with Proof of Claim No. 1.  Whichever figure is closer to the mark; the Debtor is

responsible for it by having guaranteed it.  Pl.'s Mot. Ex. D.

It is this personal debt that prompted the Debtor to file the instant Chapter 7 case.  In it,

the Bank filed this adversary proceeding seeking to except its claim from the Debtor's discharge

or to deny him a discharge altogether.  Both counts are premised on alleged fraudulent

statements: that the Debtor overvalued accounts receivable in persuading the Bank to extend the

credit line and that he lied at his creditors meeting.  After the pleadings closed, the parties

---

[2] The Plaintiff offered no direct testimony of a representative of the Bank in support of its motion.
[3] The Debtor's Schedule E/F lists the debt at $3.6 million while the Bank's Proof of Claim is for the lower figure.

undertook some discovery.  Both sides moved for summary judgment on one of the counts, but

the Debtor's request was stricken as untimely.  <u>See</u> Order of June 2, 2023.  (doc. #55).  That left

for decision the Bank's request which is limited to Count II, the objection to discharge.

### III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)[4] provides that summary judgment should be

granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed.R.Civ.P. 56(c).  A motion for summary judgment will not be

defeated by the mere existence of some disputed facts but will be defeated when there is a

genuine issue of material fact.  <u>Anderson v. Liberty Lobby Inc.,</u> 477 U.S. 242, 247–48 (1986). A

genuine issue exists when the trier of fact "could return a verdict for the nonmoving party."

*Cooley v. Merski,* 2009 WL 742692, at * 2 (W.D.Pa. March 20, 2009) (*citing Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In deciding a motion for summary judgment, it is not the court's role to weigh the

disputed evidence and decide which is more probative, or to make credibility determinations.

<u>Benchmark Group, Inc. v. Penn Tank Lines, Inc.,</u> 612 F.Supp.2d 562, 573 (E.D. Pa. April 8,

2009) (<u>citing Boyle v. County of Allegheny, Pa.,</u> 139 F.3d 386, 393 (3d Cir.1998) (<u>citing</u>

<u>Petruzzi's IGA Supermarkets, Inc. v. Darling–Del. Co. Inc.,</u> 998 F.2d 1224, 1230 (3d Cir.1993)).

Rather, the court must consider the evidence, and all reasonable inferences which may be drawn

from it, in the light most favorable to the non-moving party.  <u>Benchmark Group, Inc.,</u> 612

F.Supp.2d at 573 (<u>citing</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,</u> 475 U.S. 574, 587

---

[4] Made applicable to adversary proceedings by B.R. 7056.

(1986) (citing U.S. v. Die bold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning

Corp., 822 F.2d 358, 361 (3d Cir.1987)). If a conflict arises between the evidence presented by

both sides, the court must accept as true the allegations of the non-moving party and draw all

justifiable inferences in his favor. Benchmark Group, Inc., 612 F.Supp.2d at 573 (citing

Anderson, 477 U.S. at 255).

The moving party bears the initial responsibility of informing the court of the basis for its

motion and identifying those portions of "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any," which it believes demonstrate the

absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323

(1986). If the moving party meets its burden, then "the nonmoving party must set forth 'specific

facts showing that there is a genuine issue for trial' or the factual record will be taken as

presented by the moving party and judgment will be entered as a matter of law." Zahavi v. The

PNC Financial Services Group, Inc., 2009 WL 904699, at *6 (W.D. Pa., March 31, 2009)

(quoting Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting

Fed.R.Civ.P. 56(e))).

## IV.    DISCUSSION

Count II – §727(a)(4)(A) False Oath or Account

The Plaintiff's objection to discharge is based on §727(a)(4)(A), which provides that a

discharge will be denied to a debtor who "in or in connection with the case—(A) made a false

oath or account." 11 U.S.C. §727(a)(4)(A). To deny a discharge on this basis, a creditor must

prove that: (1) the debtor made a false oath or statement, (2) the debtor knew the statement was

false, (3) the debtor made the statement with the intent to deceive, and (4) the statement was

material to the bankruptcy case.  In re Hatch, 2009 WL 3208694 at *8 (Bankr.E.D.Pa. September 30, 2009).

*False Oaths*

 The Plaintiff identifies as a false oath the statements made by the Debtor regarding when he ended his association with his former company.  Compl. ¶¶37, 38; Mot. ¶31.  The statements were made at the meeting of creditors and repeated at the Debtor's deposition.  Statements made at a meeting of creditors are made under oath.  Bielan Miklos & Makrogiannis v. Vasquez, 2010 WL 1644175, at *6 (Bankr.D.N.J. Apr. 21, 2010); Office of the U.S. Tr. v. Zimmerman (In re Zimmerman), 320 B.R. 800, 807 (Bankr.M.D.Pa.2005) (stating that debtor was under oath when he testified at the § 341 meeting).  Likewise, statements given at deposition are made under oath and would be considered as such for purposes of §727(a)(4).  Id.; see also  6 Collier on Bankruptcy ¶ 727.04[c] (including among false oaths statements by debtor at an examination during course of proceedings and at a section 341 meeting);  Structured Asset Services, LLC v. Self (In re Self), 325 B.R. 224, 245 (Bankr.N.D.Ill.2005)("A debtor's petition, schedules, statement of financial affairs, statements made at a § 341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4)"); In re Kontos, 2014 WL 176571, at *6 (Bankr. M.D.N.C. Jan. 13, 2014)(same).

 The specific statements which the Bank says are false pertain to what date the Debtor alleges that he left the company.  The Debtor's statements indicate that he left the company sometime in the first week of March 2020.[5]  See Pl.'s Mot., Ex. A., 341 mtg of Feb. 23, 2022,

---

[5] The specific end date in question is either March 3 or March 7, 2020, depending on the testimony. Compare Ex. A, at 44 with Ex. B at 16

44:12-14; 341 mtg of March 8, 2023,[6] 24:21-24; see also id., Ex. B Hercker Dep. 16:18-20.  In support of its claim that this is a lie, the Bank offers an array of evidence to demonstrate that the Debtor continued working at his former company into the Spring/Summer of 2020 and as late as November of that year.  First, the Bank offers an email of March 24, 2020, wherein the Debtor asked the Bank for a three-month deferment on loan payments due to the pandemic.  See Pl.'s Mot. Ex. K.  Next, it points to documents that Debtor signed as an employee of his former company and had notarized well after April 2020.  Id. Ex. G, H.  The Bank adds that the Debtor furnished it with a personal financial statement dated June 30, 2020, which states that the Debtor is still an employee of that company.  Id., Ex. J.  The Debtor's name continued to appear on the company payroll as late as November 2020.  Id.  Ex. I.

The Debtor sees the Bank's portrayal of the handful of actions the Debtor undertook on the company's behalf after his purported departure as an exaggeration.  He explains that after leaving the company in March 2020 he "never returned to the office, stopped working in his dual roles in construction management and handling the company's financial affairs, and was home recovering from medical problems." Dr. Br. 19.  What he did, explains the Debtor, is nothing more than "undertaking a few minor tasks that he was requested to perform" such as contacting the Bank's officer (Mr. Guns) about a COVID-relief loan because it was the Debtor who had a long-standing relationship with the Bank officer.  Id.  Or it was signing a few documents in his former partner's absence so that the company would get paid.  Id.  Moreover, the Debtor alleges that the fact that he was still listed on the payroll records does not mean that he received any money from the company at that time.  Id.  And while the Debtor furnished the Bank with the Personal Financial Statement in June 2020 he did so because the loan documents originally

---

[6] The first meeting of creditors was continued.

required this.  Id. 20.  Nothing about any of this, says the Debtor, makes his statements about

when he left the company untruthful.

*Knowingly False*

But even if it were beyond dispute that Debtor falsely claimed *when* his last day at work

was, he must have known that statement was untrue.  A false statement is made knowingly if the

statement is (1) known by the debtor to be false; (2) made without belief in its truth; or (3) made

with reckless disregard for the truth.  In re Young, 576 B.R. 807, 815 (Bankr. E.D. Pa. 2017).

"[C]ase law provides that reckless disregard for the accuracy of the oaths made in a bankruptcy

case satisfies the scienter requirement under subparagraph (4)(A)."  In re Clark, 2018 WL

4940799, at *7 (Oct. 10, 2018, Bankr. E.D. Pa.).

Here, the Debtor admits to having acted on his former company's behalf after March

2020.  He argues, however, that these actions benefitted his former company and were

inconsequential as to himself.   If true, this would indicate that Debtor did not *knowingly* make a

false claim as to his separation date.

*Intent*

Yet even if the Debtor knew that his claim of when he stopped working was false,

§727(a)(4) requires that the statement be made with the purpose of deceiving the Bank.   The

plaintiff may prove the requisite intent under §727(a)(4) by circumstantial evidence or it may be

inferred from a pattern of nondisclosure and concealment. E.g., In re Oakley, 503 B.R. 407, 426

(Bankr. E.D. Pa. 2013), aff'd, 530 B.R. 251 (E.D. Pa. 2015).  In determining whether a false

statement was made with fraudulent intent:

> Courts may consider the debtor's education, business experience, and reliance on counsel
> ..., but the debtor is not exonerated by pleading that he or she relied on patently improper
> advice of counsel. Furthermore, a debtor cannot, merely by playing ostrich and burying

his head deeply enough in the sand, disclaim all responsibility for statements which he
made under oath.

In re Giquinto, 388 B.R. 152, 179 (Bankr. E.D. Pa. 2008) quoting In re Spitko, 357 B.R. 272,

313-14 (Bankr.E.D.Pa.2006).

   In the face of the numerous documents which the Bank offers to show that the Debtor

continued to work with his former company after March 2020, the Debtor insists that he was

doing a few minor things to help the company in the months thereafter.  None of this, says the

Debtor, was intended to mislead the Bank.  A trial is required, then, to determine if that was the

case.

*Materiality*

   But in addition to a wrongful motive, the plaintiff must demonstrate that the infraction

matters to the underlying bankruptcy case.  What makes this determination challenging is that it

does not involve non-disclosure of an asset or interest.  Rather, it involves an alleged false

statement made during this proceeding.  A statement is considered material under §727(a)(4)

when the subject "bears a relationship to the bankrupt's business transactions or estate, or

concerns the discovery of assets, business dealings, or existence and disposition of property."

Hampton v. Young, (In re Young), 576 B.R. 807, 814 (Bankr.E.D.Pa. 2017).  Materiality, then,

may turn on the degree to which, if any, the misstatement impeded the proper administration of

the bankruptcy case.  In re Mannion, 629 B.R. 783, 787 (Bankr.E.D.Pa.2021).

   Even if I were to determine that the Debtor lied when he stated that he was no longer with

his company after March 2020, the effect on the underlying bankruptcy case remains unclear.

The Bank insists that the Debtor's false statements are not trivial (Bank's Mot. ¶67), but that

does not necessarily make them meaningful in this context.  This is a Chapter 7 case in which the

Trustee has declared no assets available for distribution.  The Debtor has no secured or priority

creditors, and only three (3) unsecured creditors in total: other than the Bank (who is owed in excess of $3.6 million), the Debtor owes two (2) credit cards debt which total less than $350.00. This gives the appearance of a two-party dispute which seems better suited for the non-dischargeability request set forth in Count I of the Complaint.  So even assuming that the Debtor is lying about when he left the company, a truthful answer would not have changed the course of the Chapter 7 case.

*Summary*

The Court finds that this record cannot support a summary ruling.  There is agreement as to what was said by the Debtor, but the parties dispute what inference can be made given the context in which he said what he did.  A trial then is necessary to make findings as whether the Debtor lied in this bankruptcy case and the impact it may have had on the proceeding.

An appropriate Order follows.

Date: **August 14, 2023**

_____
PATRICIA M. MAYER
U.S. BANKRUPTCY JUDGE